**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


RANDALLL S. FABER and
NANCY T. FABER,

               Plaintiffs,

v.                               CASE NO. 06-12669
                               HONORABLE DENISE PAGE HOOD

THE FJH MUSIC COMPANY, INC.
FRANK J. HACKINSON, and
HELEN MARLAIS,

               Defendants.
_____/

## I.     INTRODUCTION

       This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on July 21, 2006.  Plaintiffs filed a

Response to Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to FRCP 12(b)(6) on

August 25, 2006.

## II.    STATEMENT OF FACTS

       In 1988, Plaintiffs Randall S. and Nancy T. Faber, piano composers, performers and

educators, entered into a Writer/Arranger Agreement (the Agreement )with Defendant publishing

company, The FJH Music Company, Inc. (FJH), a Florida corporation, for publication of

Plaintiffs' piano-teaching works.  Under the Agreement, Plaintiffs transferred copyrights for

eighteen publications they previously authored, including the *Piano Adventures*, to FJH.

According to Plaintiffs, the Agreement provided for the following:

               1) Plaintiffs agreed to provide their arranging and composing services in

1

the music print publishing field exclusively to FJH,

2)  FJH is required to market, promote and exploit Plaintiffs' publications, however,

3)  FJH has discretion to decide not to publish Plaintiffs' submitted publications,

4) Plaintiffs retain all ownership rights to the works submitted to FJH,

5) In the event that FJH decides not to publish or otherwise exploit Plaintiffs' submitted works, within one year from the date of receipt, an "Original Work" should revert back to Plaintiffs,

6)  FJH agreed to pay royalties to Plaintiffs whenever FJH sold Plaintiffs' publications.

Plaintiffs also allege that Defendant Frank J. Hackinson, FJH  President and CEO, functioned as Plaintiffs' publisher and manager, handling all of the business affairs, with the objective of building Plaintiffs' name recognition and branding through publications and promotion.  Plaintiffs assert that Defendant Hackinson met this objective by arranging Plaintiffs' personal appearances, providing an FJH address for fan mail, and negotiating on behalf of Plaintiffs regarding their publications.  Plaintiffs further assert that Plaintiffs and FJH are closely associated with each other in the relevant market.

FJH published the first two levels of *Piano Adventures* in 1993.  Many other publications produced by Plaintiffs were also published by FJH.  In the late 1990s, Plaintiffs assert that they agreed with FJH and Hackinson to exploit Plaintiffs' works internationally.[1]  In 2000, Hackinson solicited Plaintiffs' interest in extending the Agreement in order to accomplish the international

---

[1]   Sometime in 1998 and 1999, the FJH Director of Keyboard Publications at the time, Elizabeth Gutierrez, and Plaintiffs devoted a significant amount of time creating a Spanish-language edition of *Piano Adventures*.

2

exploitation of Plaintiffs' works.  During negotiations, Plaintiffs assert that Hackinson made the following representations:

> 1) FJH intended to release a Spanish-language edition of *Piano Adventures* in the U.S. and South America, and would immediately pilot-test and publish the edition;
>
> 2) FJH intended to translate and imminently pursue marketing of *Piano Adventures* in other international markets, such as Japan, China, and in Europe;
>
> 3) Hackinson was in negotiations with Warner Brothers Publications, Inc. in order to accomplish the international expansion of *Piano Adventures*;
>
> 4) Plaintiffs would receive undiluted royalties (50% for Plaintiffs, and the remaining to be split between co-publishers);
>
> 5) FJH would make every effort to ensure that *Piano Adventures* remained a viable and competitive piano-teaching method for an anticipated life span of 35 years;
>
> 6) FJH will expand Plaintiffs' product line into the preschool market.

On December 19, 2000, Plaintiffs agreed to amend the Agreement based upon Hackinson's representations.  The current Agreement was amended through April 2010.

Contrary to Hackinson's representations, Plaintiffs assert that FJH failed to pursue international marketing and translations of *Piano Adventures*, except for distribution in English-speaking countries, and negotiating a sub-publishing deal in Taiwan.  In October 2004, Hackinson informed Plaintiffs that he had no intention of taking *Piano Adventures* international until he was able to introduce a full FJH product line which would include more than just Plaintiffs' works.

Additionally, Plaintiffs assert that in January 1999, they discussed with Hackinson the concept for a new, innovative piano literature series to be published under the name *Adventures*

*in Piano Literature* (AIPL). The series would consist of eight to twelve volumes of graded piano literature which would correlate with the Royal Conservatory of Music Exams. In 2002, FJH authorized the AIPL series and Plaintiffs began working.

Plaintiffs planned the AIPL series to consist of three-correlating books: Repertoire (a collection of edited piano literature); Structure (a music history and theory workbook); and Etudes (a collection of technique exercises). To distinguish the AIPL series in the marketplace, Plaintiffs decided on unique features: a graphic-intensive look to convey the characteristics of the periods taught–Baroque, Classical, Romantic and Twentieth Century–and to provide a visual counterpart to the scholarly text, including painted reproductions of art masterworks associated with the above musical periods. Plaintiffs assigned a certain color header and a certain re-painted art masterwork (approximately 3 inches by 3 inches) to differentiate the periods.

In 2002, at the suggestion of Hackinson, Plaintiffs entered into several collaboration agreements with Defendant Helen Marlais for the AIPL series. In 2002 and 2003, Marlais, on numerous occasions, worked closely with Plaintiffs in the development, compilation and editing of the Repertoire and Structure books in the AIPL series. In May 2003, Plaintiffs submitted twelve volumes of the AIPL Repertoire for music typeset to FJH. Hackinson authorized production of the first four volumes and music typeset began shortly thereafter.

In September 2003, FJH hired Marlais as Pedagogy Editor. In a November 2003 business meeting, Plaintiffs and Hackinson discussed Marlais' potential conflict of interest, as both a collaborator with Plaintiffs on the AIPL series, and Pedagogy Editor with FJH. During November and December 2003, Plaintiffs continued to negotiate with FJH over artwork and other issues surrounding the Structure books for the AIPL series. They also continued to express

4

concern about Marlais' conflict of interest.

In December 2003, Marlais was appointed by Hackinson as FJH Director of Keyboard Publications.  In January 2004, Marlais expressed her desire to end her obligations to collaborate with Plaintiffs on the Structure books of the AIPL.  Hackinson negotiated with Plaintiffs, and on January 20, 2004, Plaintiffs and Marlais signed an agreement releasing Marlais from collaborating with Plaintiffs on the Structure books of the AIPL.  Soon after, Hackinson postponed publication of the Structure books of the AIPL.  Later, in January 2004, Plaintiffs submitted their *Preschool Piano Method*, which was reviewed by Marlais.  FJH declined to publish this work.

In March 2004, FJH published Marlais' first book in her piano literature series entitled *Succeeding with the Masters* (SWTM), despite the fact, as Plaintiffs assert, that Marlais' work directly competed with Plaintiffs' AIPL Structure series.  Plaintiffs assert that Marlais' SWTM series misappropriated novel and unique concepts and ideas from Plaintiffs' AIPL series, including the highly graphic layout depicting the historic musical periods taught.  Plaintiffs also assert that FJH used the designation of "FF" in its catalog for all of Plaintiffs' works and that this designation has come to denote publications that are authored by Plaintiffs.  Plaintiffs assert that FJH gave Marlais' works, the SWTM and *The Festival Collection*, the same "FF" designation in the FJH catalog.  Plaintiffs assert that this is misleading, and consumers will be deceived into purchasing Marlais' works, believing they are purchasing Plaintiffs' works.

In May 2004, Plaintiffs agreed to release Marlais from further collaboration on the AIPL, the Repertoire series, upon Hackinson's promises to: (1) promptly revert the copyright of *Preschool Piano Method* to Plaintiff; (2) allow Plaintiffs to choose their creative art team for

AIPL, Structure and Repertoire; and (3) resume publication of the AIPL series.  Plaintiffs assert

that Hackinson reneged on all of the above promises.

It appears that the relationship between the parties continued to deteriorate.  In November

2004, Hackinson informed Plaintiffs that he was discontinuing Plaintiffs' workshop clinicians.

Plaintiffs assert that these clinicians were reassigned to Marlais.  A week later, Hackinson

informed Plaintiffs that they would not have a showcase at the national convention of the Music

Teachers' National Association.  Additionally, Hackinson abruptly cut off all channels of

communication with Plaintiffs.  Plaintiffs assert that Hackinson  rebuffed their attempts to

resolve the various issues between the parties.

In March 2006, FJH published the first four volumes of Marlais' 8-volume repertoire

series, entitled *The Festival Collection*, an extension of the SWTM series.  According to

Plaintiffs, this work likewise misappropriated novel and unique concepts and ideas from

Plaintiffs' AIPL series.  In effect, Plaintiffs allege that FJH substituted Marlais' piano literature

series for Plaintiffs, and deliberately impeded the AIPL's progress in order to focus its resources

on Marlais' competing publications.

Lastly, Plaintiffs assert that an audit[2] of the royalties due and owing under the Agreement

for the six-month period beginning on January 1, 2005 through June 30, 2005, revealed that FJH

understated and failed to pay royalties to Plaintiffs in the amount of $109,028.01.  It is Plaintiffs

contention that FJH improperly calculated its royalty reserves and withheld disbursement of

these reserves in violation of the Agreement.

## III.     STANDARD OF REVIEW

---

[2]  Plaintiffs hired the accounting firm of Prager and Fenton, LLP to conduct the audit.

6

Federal Rules of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

## IV. APPLICABLE LAW & ANALYSIS

### A. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing, Count I, and Failure to Pay Royalties, Count II, Failure to Revert Original Works, Count V)

The Writer/Arranger Agreement contains a forum selection clause, which states:

> Governing Law. This agreement shall be governed by and
> construed in accordance with the laws of the State of Florida
> applicable to agreements made by residents of and to be performed
> entirely within the State of Florida.

It appears that both parties agree that Florida law should apply to determine the rights and obligations of the parties under the terms of the Writer/Arranger Agreement. Further, the Supreme Court has stated that as long as the chosen forum was agreed to in an arm's-length transaction, "absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). The Court will apply Florida law.

1.        **Implied Covenant of Good Faith and Fair Dealing**

The elements of a breach of contract claim are: 1) the existence of a contract, 2) a breach of the contract, and 3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 932 So. 2d 1172, 1187 (Fla. Ct. App. 2006). Defendants argue that Plaintiffs can not state a claim for breach of contract under a theory of breach of an implied covenant of good faith and fair dealing. Defendants assert that under Florida law, an action for breach of implied covenant of good faith and fair dealing cannot be maintained absent a breach of an express term of a contract. Defendants argue that Plaintiffs have failed to allege this requisite express provision because there is no express provision requiring Defendants to internationally promote and exploit Plaintiffs' publications. In fact, the Writer/Arranger Agreement expressly gives Defendants the discretion to market and exploit Plaintiffs' works. As such, Plaintiffs have failed to allege Defendants breached an express provision of the contract.

"The implied covenant of good faith exists in virtually all contractual relationships." *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So.2d 787, 791 (Fla. Ct. App. 2005). "Its purpose is to protect the reasonable expectations of the contracting parties." *Id.* A breach of an implied covenant of good faith and fair dealing, however, cannot exist independent of a breach of an express term of a contract. This implied covenant "attaches to the performance of a specific or express contractual provision." *Id.* at 792.

In *Avatar*, the contract at issue contained a clause which allowed the defendant to terminate the agreement for any reason, at any time, the only requirement being that the defendant had to provide ten days notice of its intent to terminate the parties' agreement. *Avatar v. Devp. Corp. V. De Pani Constr., Inc.*, 834 So. 2d 873, 874 (Fla. Dist. Ct. App. 2002). The

8

plaintiff filed suit alleging the defendant breached the parties' contract by violating its implied covenant of good faith and fair dealing by terminating the contract. *Id.* at 875-76.   In finding in favor of the defendant, the *Avatar* court held that because the contract contained an express termination provision, the implied covenant of good faith and fair dealing could not "be used to vary the unambiguous terms of a written contract . . . ." *Id*. at 876.   "The duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id*.  This is contrary to the facts of the present matter because the Writer/Arranger Agreement is vague in regard to Defendants' discretion and obligation to market and exploit Plaintiffs' publications.  Defendants were left with discretion as to the publishing and marketing of Plaintiffs' works in the Writer/Arranger Agreement, which has no express provisions as to Defendants' obligations.  In *Cox*, the court found that issues of fact existed as to whether the defendants breached their implied covenant of good faith and fair dealing under the parties' freight hauling contract, which expressly gave the defendants broad discretion to assign loads for transport.   *Cox v. CSX Intermodal, Inc*., 732 So. 2d 1092 (Fla. Ct. App. 1999).   The *Cox* court stated:

> Thus, where the terms of the contract afford a party substantial discretion to
> promote the party's self-interest, the duty to act in good faith nevertheless limits
> that party's ability to act capriciously to contravene the reasonable contractual
> expectations of the other party.

*Id*. at 1097-98.   Plaintiffs have therefore alleged sufficient facts to support the claim of breach of implied covenant of good faith and fair dealing.

### 2.      Failure to Pay Royalties

Defendants assert that under the Agreement they are only required to pay royalties on books that have been printed, sold by FJH to retailers, not returned, and for which FJH has received payment.   Defendants assert that Plaintiffs' claim should be dismissed because "Plaintiffs have not alleged that FJH withheld reserves from them with respect to royalties owed on books that have been fully paid for."  (Defs.' Mot. to Dismiss, p. 6)

The Court finds that Plaintiffs have alleged sufficient facts to withstand dismissal of this claim.  Plaintiffs allege the existence of a valid contract, that this contract was breached by Defendants' failure to pay royalties to Plaintiffs, and that Plaintiffs have suffered damages as a result.  Specifically, Plaintiffs estimate that between January 1, 2005 to June 30, 2005, Defendants failed to pay royalties in the amount of $109,028.01.

The Court  notes that Defendants' argument on this claim, as well as several others, is inappropriate for a Motion to Dismiss under Rule 12(b)(6), as the Court must take as true, all of Plaintiffs' factual allegations in the Complaint.  Defendants may ultimately establish the argument they assert here, that they did not breach the Agreement by failing to pay royalties. However, taking the Plaintiffs' allegations as true, it cannot be said as a matter of law that Plaintiffs can establish no set of facts that would entitle them to relief.  *Varljen*, 250 F. 3d at 429.

### 3.      Failure of Reversion of Original Works

Defendants assert that this claim should be dismissed because the Agreement was amended in 1989, which stated that works would revert to Plaintiffs two years after submission, as opposed to one year, as Plaintiffs allege in the Complaint.

Plaintiffs have likewise alleged sufficient facts to withstand dismissal on this breach of contract issue.  Pursuant to Section 9.2 of the Writer/Arranger Agreement, Defendants were

10

required after one year, upon request from Plaintiffs, to return all of Plaintiffs' original works that Defendants, in their discretion, decided not to publish or otherwise exploit.  Such works would "revert" back to Plaintiffs in order to give them an opportunity to submit the original works to another publisher for publication.  Plaintiffs allege that one year after they submitted *Preschool Piano Method* to Defendants, and requested Defendants' acknowledgment that this work reverted back to Plaintiffs, Defendants ignored this request and refused to implement the reversion of Plaintiffs' *Preschool Piano Method*.

### B.    Fraudulent Concealment (Count III)

The parties appear to agree that Michigan law governs this claim.[3]  "Suppression of facts and truths can constitute silent fraud where the circumstances are such that there exists a legal or equitable duty to disclose."  *Cleary Trust v. Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 500 (2004)(citing *Hord v. Environmental Research Inst.*, 463 Mich. 399, 412 (2000)).  "A legal duty to disclose commonly arises from a circumstance in which the plaintiff inquires regarding something, to which the defendant makes a false or misleading representation by replying incompletely with answers that are truthful but omit material information.*"  Id.*

Defendants argue that Plaintiffs' claim for fraudulent concealment must be dismissed because Plaintiffs have not alleged "violation of a legal duty separate and distinct from the contractual obligation."  *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 454 Mich 65, 84 (1977)(citing *Hart v. Ludwig*, 347 Mich. 559, 560; 79 N.W. 2d 895 (1956).  "As a general rule,

---

[3]  Defendants state in their Motion to Dismiss that "[a]lthough the parties' Contract provides that the Contract shall be governed by Florida law, Michigan law is arguably applicable to plaintiffs' fraud and tort claims." (Defs' Mot. to Dismiss, p. 6) Plaintiffs appear to agree as they do not argue that Florida law should apply, and use Michigan law in support of their argument that this claim should not be dismissed.

11

there must be some active negligence or misfeasance to support tort.  There must be some breach

of duty distinct from breach of contract." *Hart*, 347 Mich. 559.   "The distinction between

conduct that will support an action in tort or on the contract is "admittedly difficult to make in

borderland cases." *Id.* at 564.  Defendants assert that in the instant matter the only conduct at

issue is Defendants' failure to accurately account for and pay royalties to Plaintiffs.  This

conduct is solely governed by the Writer/Arranger Agreement; it is "not a duty imposed by the

law upon all, . . . but a duty arising out of the intentions of the parties themselves and owed only

to those specific individuals to whom the promise runs." *Id*. at 565-66.  Plaintiffs counter that

Defendants' performance was not simple negligence, but that Defendants knew the royalty

statements contained inaccurate information and purposefully failed to inform Plaintiffs of the

inaccuracies.  Plaintiffs argue that Defendants intended Plaintiffs to rely on these inaccurate

statements so that Plaintiffs would remain unaware of the royalties due and owing to them.  The

Court agrees with Defendants, Plaintiffs have not alleged a duty separate and distinct from

Defendants' obligations under the Agreement, as such Plaintiffs' claim for fraudulent

concealment is dismissed.

### C.    Breach of Fiduciary Duty (Count VI) and Request for an Accounting (Count IV)

#### 1. Fiduciary Duty Generally

"A fiduciary duty arises where there is a fiduciary relationship between the parties."

*Portage Aluminum Co. v. Kentwood National Bank,* 106 Mich. App. 290, 294; 307 N.W.2d 761

(1981). "The duty arises out of the relation subsisting between two persons of such a character

that each must repose trust and confidence in the other and must exercise a corresponding degree

of fairness and good faith." *Id.*   A fiduciary owes a duty of good faith to his principal and is not

permitted to act for his private advantage or otherwise contrary to the interests of his beneficiary or principal in matters affecting the fiduciary relationship. *Central Cartage v. Fewless,* 232 Mich. App. 517, 524; 591 N.W.2d 422 (1998).

> Black's Law Dictionary defines "fiduciary relationship" as:
>
> A relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships–such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client–require the highest duty of care. Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.–Also termed *fiduciary relation; confidential relationship.*

*Black's Law Dictionary* 640 (7th ed.1999).

This Court has previously held that "fiduciary relationships can arise in several different situations . . . . [and a] fiduciary relationship . . . exists when one person or entity has a duty to act for another on matters falling within the scope of the relationship." *Midwest Healthplan v. Nat'l Med. Health Card. Sys.,* 413 F. Supp. 823, 833 (E.D. Mich. 2005).

"A breach of fiduciary duty claim requires that the plaintiff reasonably reposed faith, confidence and trust in the fiduciary." *Rose v. Nat'l Auction Group,* 466 Mich. 453, 469; 646 N.W.2d 455 (2002). The Michigan Supreme Court has held that it is unreasonable for a party to repose confidence and trust in another "when any of the interests of the [parties] are adverse." *Beaty v. Hertzberg & Golden, P.C.,* 456 Mich. 247; 571 N.W.2d 716 (1997).

Defendants argue that no fiduciary relationship exists because Plaintiffs' subjective

13

expectations that a fiduciary relationship existed is insufficient. Additionally, Defendants argue that Plaintiffs were not owed fiduciary duties separate and apart from the express contract. Plaintiffs counter that they relied on Defendants' advice on how to make their publications successful and that Hackinson acted as Plaintiffs' manager by negotiating on their behalf with third parties related to their publications. As such, the relationship between the parties involved trust and confidence. Lastly, Plaintiffs argue that Defendants breached their fiduciary duty by arranging for Marlais to collaborate with them on publication of the *Adventures in Piano Literature* series and then allowing Marlais to proceed with her own publication which misappropriated ideas from Plaintiffs' AIPL series.

The Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duty because they cannot establish that a fiduciary relationship existed. Under Michigan law, it was unreasonable for Plaintiffs to repose confidence and trust in Hackinson and FJH when the parties' interests were adverse. *Beaty*, 456 Mich. at 260-61. The Agreement expressly provided that FJH, at its discretion, could decline to publish any of Plaintiffs' works. As such, Plaintiffs knew that FJH's interests may at some point diverge from Plaintiffs' interests in having their works published. Plaintiffs' claim for breach of fiduciary duty is dismissed.

### 2.      Request for an Accounting (Count IV)

Defendants argue that the requirements necessary to establish a claim for an accounting are not present under the circumstances. "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Kee v. Naitonal Reserve Life Ins. Co.*, 918 F. 2d 1538, 1540 (11th Cir. 1990). As Plaintiffs cannot demonstrate the existence of a

14

fiduciary relationship, Plaintiffs cannot state a claim for an accounting.  Plaintiffs' claim

requesting an accounting is dismissed.

### D.        Fraud in the Inducement of Contract (Count VII)

"Fraud in the inducement presents a special situation where parties to a contract appear to

negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an

informed decision is undermined by the other party's fraudulent behavior."  *Huron Tool & Eng'g*

*Co. v. Precision Consulting Servs*., 209 Mich. App. 365, 372-73; 532 N.W. 2d 541 (1995).  The

*Huron* court held that fraud in the inducement is distinct from other kinds of fraud in that with

"the latter kind of fraud, the misrepresentations relate to the breaching party's performance of

the contract and do not give rise to an independent cause of action in tort."  *Id.* at 373.  In order

to withstand dismissal, Plaintiffs' claim must be "extraneous to the contractual dispute . . . ."  *Id.*

at 375.  Essentially fraud in the inducement "addresses a situation where the claim is that one

party was tricked into contracting.  It is based on pre-contractual conduct which is, under the

law, a recognized tort."  *Id.* at 371.

The Court finds that Plaintiffs have stated a claim for fraud in the inducement of contract.

Plaintiffs allege in their Complaint that they agreed to extend the term of the Agreement based

upon Hackinson's representations that: (1) FJH would immediately pilot-test and publish the

Spanish-language version of *Piano Adventures*; (2) FJH would imminently pursue other

international markets for Plaintiffs' works; and (3) FJH would expand Plaintiffs' products to the

preschool market.  The claim centers on Hackinson's pre-contractual representations.  Plaintiffs

allege that after they agreed to extend the Agreement until 2010, Hackinson informed them that

he had no intention of marketing their works on an international scale, until he developed more

15

FJH products to market internationally.

###### E.     Promissory Estoppel (Count VIII)

Plaintiffs assert a claim under a theory of promissory estoppel as an alternative to Plaintiffs' contract claims.  To support a claim of promissory estoppel, Plaintiffs must show (1) the existence of a promise, (2) the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided.  *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993).

Plaintiffs have stated a claim upon which relief can be granted.  It is possible that the fact finder may determine that Hackinson's promises to internationally exploit Plaintiffs' works were not part of the parties' Agreement.  If this is the case, then promissory estoppel may apply to avoid injustice.

###### F.     Tortious Interference with a Business Relationship (Count IX)

Under Michigan law, the elements of a tortious interference with an advantageous relationship, are: "(1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted." *Wausau Underwriters Inc. Co. v. Vulcan Development, Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).

To establish the third element, wrongful interference, the plaintiff must show that the

16

defendant committed a *per se* wrongful act or committed a lawful act with malice and without justification "for the purpose of invading the contractual rights or business relationship of another." *Wausau*, 323 F.3d at 404.  A *per se* wrongful act is one that is "inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 12-13.  A lawful act done with malice and without justification, must be proven by presenting specific affirmative action by the defendant that corroborates the improper motive of the interference. *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 217 Mich. App. 687, 699 (Mich. App. 1996).  Where the defendant's actions were motivated by legitimate business reasons, its actions do not constitute improper motive or interference. *Wausau*, 323 F.3d at 404; *Mino v. Clio School District*, 255 Mich. App. 60, 78 (2003).

Plaintiffs' claim rests upon Marlais' conduct in misappropriating the novel and unique ideas contained in Plaintiffs' AIPL series and using it for her own SWTM series.  Plaintiffs have stated that Plaintiffs and FJH had a business relationship, as well as a written Agreement, that Marlais was cognizant of this relationship, as it was Hackinson who suggested Marlais collaborate with Plaintiffs on the AIPL series.  Plaintiffs have also stated that Marlais misappropriated their original ideas, a wrongful act that cannot be justified under any circumstances and that, as alleged by Plaintiffs, ultimately led to FJH substituting Plaintiffs' works with Marlais' publications.  Plaintiffs' claim does not rest solely upon Marlais' desire to promote her work, as Defendants assert in their Motion to Dismiss.  Defendants' argument that Plaintiffs have not alleged a breach of the Agreement is likewise without merit.  Plaintiffs have alleged that Defendants failed to act in good faith, failed to pay royalties and failed to revert works back to Plaintiffs.  Plaintiffs have alleged that damages have resulted as the relationship

between the parties has evidently deteriorated to the point of its nonexistence, and that

Defendants owe Plaintiffs for unpaid royalties.  Plaintiffs have stated a claim upon which relief

can be granted.

### G.  Lanham Act violations (Count XI)

Plaintiffs have also brought a claim for unfair competition based upon a theory of false

designation of origin under § 43 of the Lanham Act.  Section 43 provides that

> [a]ny person who, on or in connection with any goods or services, ... uses in
> commerce any word, term, name, symbol, or device, or any combination thereof,
> or any false designation of origin, false or misleading description of fact, or false
> or misleading representation of fact, which--
>> (A) is likely to cause confusion, or to cause mistake, or to deceive
>> as to the affiliation, connection, or association of such person with
>> another person, or as to the origin, sponsorship, or approval of his
>> or her goods, services, or commercial activities by another
>> person...
>
> *                         *                         *
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  A claim for false designation of origin requires a showing that (1) the

false designation has a substantial economic effect on interstate commerce, and (2) the false

designation creates a likelihood of confusion.  *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir.

1998)

The Sixth Circuit has established that the following factors are relevant in determining

the likelihood of consumer confusion: (1) strength of the plaintiff's mark; (2) relatedness of the

goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used;

(6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8)

likelihood of expansion of the product lines.  *Frisch's Restaurants, Inc. v. Elby's Big Boy of*

18

*Steubenville, Inc.*, 670 F.2d 462, 468 (6th Cir. 1982). These factors are to be considered together

and "imply no mathematical precision." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.

1988) ("*Wynn Oil I*"). A plaintiff need not show that all, or even most of the factors listed are

present in any particular case to be significant. *Frich's Restaurants, Inc.* 670 F.2d at 1264. The

ultimate question is "whether relevant consumers are likely to believe that the products or

services offered by the parties are affiliated in some way." *Daddy's Junky Stores, Inc. v. Big

Daddy's Family Music Center*, 109 F.3d 275 (6th Cir. 1997).

Here again Defendants' argument is more appropriate for a Rule 56 Motion for Summary

Judgment as Defendants appear to argue that the "FF" designation is functional. The Court is

confined to determining whether Plaintiffs have stated a claim under the Lanham Act, not

whether Plaintiffs can ultimately prove all the elements of this claim.

Plaintiffs have stated a claim for unfair competition based upon false designation of

origin, the "FF" designation effects interstate commerce as it is used in FJH's catalogs to sell

Plaintiffs' works in North America. Plaintiffs also assert that the use of the "FF" designation for

Marlais' works is likely to cause consumer confusion because the "FF" designation is associated

with works authored by Plaintiffs. Plaintiffs assert that consumers will be deceived into

purchasing Marlais' works based upon this misleading designation. Plaintiffs have stated a

claim under § 43(a) of the Lanham Act.

### H.    Unfair Competition (Common Law, Count X)

Plaintiffs have asserted a claim for unfair competition under Michigan common law. The

applicable standard under Michigan common law is the same as the tests for federal trademark

infringement and federal unfair competition under 15 U.S.C. § 1125(a), whether confusion is

19

likely.  *See Homeowners Group, Inc.*, 931 F.2d at 1105 n.1; *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F. Supp.2d 800 (E.D. Mich. 2000).  Defendants argue that Plaintiffs have failed to allege that the public has been misled.   Based upon the Court's analysis of Plaintiffs' claim under the Lanham Act, the Court finds that Plaintiffs have likewise stated a claim for unfair competition under Michigan common law.

## I.      Unjust Enrichment   (Count XII)

There are two requirements to establish an unjust enrichment claim, (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."  *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991).

Plaintiffs have stated a claim for unjust enrichment.  Plaintiffs assert that Marlais misappropriated novel and unique ideas from Plaintiffs' AIPL series.  Plaintiffs also allege that FJH  published these works containing the misappropriations.  Taking Plaintiffs' allegations as true, Plaintiffs have stated that Defendants received the benefit of Plaintiffs' ideas and concepts via the publication and sale of Marlais' works.  Plaintiffs have not received compensation for providing the foundation of Marlais' works, as such Plaintiffs have stated a claim for unjust enrichment.

## J.      Declaratory Judgment (Count XIII)

The parties appear to be in disagreement about the appropriate law to apply to this claim. Plaintiffs expressly state that they do not concede that Florida law applies to this claim, while Defendants cite only Florida law in support of their motion for dismissal as to Plaintiffs' declaratory judgment claim.

The Court finds that this claim is governed by Florida law.  Plaintiffs' claim for declaratory judgment rests solely upon the parties' Agreement and appears to request that this Court declare the rights of the parties under the Agreement.  As the Agreement contains a forum selection clause, Florida law applies to this claim.

Plaintiffs have failed to state a claim upon which relief can be granted.  "The test for sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all."  *Lutz Lake Fern Rd. Neighborhood Groups v. Hillsborough County*, 779 So. 2d 380, 383 (Fla. Dist. Ct. App. 2000).  Under Florida law, "[a] declaratory judgment action will not lie when judicial determinations involve factual questions and issues and not contract interpretations or construction. . . ."  *Dimuccio v. D'Ambra*, 750 F. Supp. 495, 499 (M.D. Fla. 1990)(citing *Bergh v. Canadian Universal Insurance Co.*, 216 So. 2d 436 (Fla. 1996)).  The essence of this matter is to determine whether Defendants breached the Agreement with Plaintiffs.  Plaintiffs have not alleged that this Court must interpret the Contract, or construe its terms, or that the Agreement is ambiguous.  Plaintiffs' breach of contract claims will provide Plaintiffs with any relief they may be entitled to.

## IV.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [**Docket No. 6, filed on July 21, 2006**] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' claims for Fraudulent Concealment, Count III;

Request for an Accounting, Count IV; Breach of Fiduciary Duty, Count VI; and Request for

Declaratory Judgment, Count XIII are DISMISSED WITH PREJUDICE.


                                        /s/ Denise Page Hood_____
                                        DENISE PAGE HOOD
Dated: April 11, 2007___                United States District Judge



        I hereby certify that a copy of the foregoing document was served upon counsel of record
on April 11, 2007, by electronic and/or ordinary mail.

                                        S/William F. Lewis_____
                                        Case Manager